SCANNED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: 5
DATE FILED: FEB 1 7 2010

**PRO SE OFFICE**

RONALD MESSAM 700-08-00073

-against-

New York City Health & Hospital Corp.;
New york City; N.Y.P.D.; N.Y.P.D. Off-
icers John Doe #s 1,2,3,4,5 and 6; Be-
llevue Hospital Centre (B.H.C.); Linda
B. Curtis, Dir. of B.H.C.; Dr. Ricardo
Castaneda, Dir. of Inpatient Psychiatry;
Dr. Jermey H. Colley Md.; Cheryl Leak,
Clerical Asso. III B.H.C.; Dr. Rodzevski;
Nurse Earlinda Acampado & Fe Bonafe;
Orderlies/ Psych. Tech., Perez & John Doe
#s 9,10,11,12 and 13; Patient John Doe
#8; New York City Dep't. Corr.; Correct-
ion Officer John Doe #7; Correction Capt-
in Jane Doe #1; B.H.C. nurse Jane Doe #2;
N.Y. Cnty. D.A., Robert Morgenthau; New
York Cnty. A.D.A., David Lauscher; Hon.
Bonnie Wittner, S.C.J. N.Y. Cnty..

Amended Complaint
No. 10 Civ. 00291 (LAK)

Under the Civil Rights Act,
42 U.S.C. § 1983
(Prisoner's Complaint)

Jury Trial: YES

**I.**          **PARTIES IN THIS COMPLAINT**

**A.**
**PLAINTIFF**          Ronald Messam
                       700-08-00073
                       G.M.D.C.
                       15-15 Hazen Street
                       East Elmhurst, N.Y. 11370

**B.**
**DEFENDANT**  **No. 1**  New York City Health & Hospital Corp.,
                          125 Worth Street, Suite 510
                          New York N.Y. 10013

**DEFENDANT**  **No. 2**  The City of New York

**DEFENDANT**  **No. 3**  New York City Police Department
                          One Police Plaza,
                          New York, N.Y. 10013

-1-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Ronald Messam 700-08-00072

- against -

New York City Health & Hospital Corp. ;
New York City; N.Y.P.D.; N.Y.P.D. Offi-
cers John Doe #s  3, 4, 5 and 6; Bellevue
Hospital Centre(B.H.C.); Linda B. Curtis,
Dir. of B.H.C.; Dr. Jeremy MacKellar M.D.;
Cheryl Lesh, Clerical Asso. III B.H.C.;
Dr. Podzavski; Nurse Marlinda Acampado & Fe
Bonafe; Orderlies/Psych. Tech. Perez &
John Doe #s 9, 10, 11, 12 and 13; Patient
John Doe #8; New York City Dep't. Corr.;
Corr. Offloer John Doe #7; Corr. Captin
Jane Doe #1; B.H.C. nurse Jane Doe #2;
N.Y. Cnty. D.A., Robert Morgenthau; A.D.A.
David Lauscher N.Y. Cnty.; Hon. Ronnie Wittner,
S.C.J. N.Y. Cnty.; **Dr. Ricardo Castaneda, Dir.
of Inpatient Psychiatry.**

AMended **#**;
COMPLAINT
Under the
Civil Rights Act, 42 U.S.C.
§1983
(Prisoners' Complaint)
Jury Trial: YES

I.      PARTIES IN THIS COMPLAINT


A.
PLAINTIFF          Ronald Messam
                   700-08-00072
                   G.M.D.C.
                   15-15 Hazen Street
                   East Elmhurst, N.Y. 11370


B.
**DEFENDANT** No. 1 New York City Health & Hospital Corp.,
                   125 Worth Street, Suite 510
                   New York, N.Y. 10013

DEFENDANT No. 2 The City of New York


DEFENDANT No. 3  New York City Police Department
                   One Police Plaza,
                   New York, N.Y. 10013

-1-

### DEFENDANTS CONTINUED

DEFENDANT No. 4 John Doe #s 1, 2, 3, 3, 4, 5 and 6.
                 N.Y.P.D. Officers
                 73rd. Precinct
                 East New York ave.
                 Brooklyn N.Y. 11216

DEFENDANT No. 5 Bellevue Hospital Centre (B.H.C.)
                 First Ave. & 27th. Street
                 New York N.Y. 10016

DEFENDANT No. 6 Linda B. Curtis
                 Director of Bellevue Hospital centre
                 First Ave. & 27th. Street
                 New York N.Y. 10016

DEFENDANT No.7  Dr. Jermey H. Colley Md. ; **Dr. Ricardo Castaneda**
                 B.H.C.
                 first Ave. & 27th. Street
                 New York N.Y. 10016

DEFENDANT No. 8 Cheryl Leak, Clerical Associate III
                 Patients' Records Dep't.
                 B.H.C.
                 First Ave. & 27th. Street
                 New York N.Y. 10016

DEFENDANT No. 9 Dr. Rodzevski
                 forensic Psych. Ward B.H.C.
                 First Ave. & 27th. Street
                 New York N.Y. 10016

DEFENDANT No. 10 Earlinda Acampado, Nurse
                  B.H.C. Psych. Ward
                  First Ave. & 27th. Street
                  New York N.Y. 10016

DEFENDANT No. 11 Fe Bonafe, Nurse
                  B.H.C. Psych. Ward
                  First Ave. & 27th. Stret
                  New York N.Y. 10016

DEFENDANT NO. 12 Perez & John Doe #s 9, 10, 11, 12 and 13
                  B.H.C. Psych. Tech./Orderlies
                  First Ave. & 27th. Street
                  New York N.Y. 10016

DEFENDANT No. 13 John Doe # 8
                  Patient on Psych. ward at B.H.C.
                  First Ave & 27th. Street
                  New York N.Y. 10016

DEFENDANTS CONTINUED

DEFENDANT No. 14 New York City Department of Corrections
75-20 Astoria Blvd.
Jackson Heights
Queens N.Y. 11370


DEFENDANT No. 15 John Doe # 7, N.Y.C. Correction Officer
Brooklyn Supreme Court
360 Adams Street
Brooklyn N.Y. 11201

DEFENDANT No. 16 Jane Doe #1, N.Y.C. Correction Captin
B.H.C. Prison Ward
First Ave. & 27th. Street
New York N.Y. 10016

DEFENDANT No. 17 Jane Doe #2, nurse
B.H.C. Psych. Ward
First Ave. & 27th. Street


DEFENDANT No. 18 Robert Morgenthau, N.Y. Cnty. D.A.
One Hogan Place
New York N.Y. 10013

DEFENDANT No. 19 David Lauscher, A.D.A. N.Y. Cnty.
One Hogan Place
New York N.Y. 10013


DEFENDANT No 20 Hon. Bonnie Witner, S.C.J.
Part 61
100 Centre Street
New York N.Y. 10013


II.          STATEMENT OF CLAIM:


A.      In what institution did the event gining rise to your claim
occur?  The events occured in Bellevue Hospital Centre; the New
York COUNTY District Attorney's Office; New York City Dep't. of
Corrections.

B.      Where in the institution did the events giving rise to your
claim occur? The Prison and civillian section of the Forensic Psych.
Ward of B.H.C.; A.D.A. David Lauscher's office.

C.      What date and approx. time did events occur? CONT''D NEXT PAGE.

## STATEMENT OF CLAIM CONT'd.

DEFENDANTS:      New york City; New York City Police Department.

1)      On 06-01-08, after my discharge from Bellevue Hospital Centre (B.H.C.), N.Y.P.D. officers from the 73rd. precinct transfered me from B.H.C. Forensic Psychiatric Ward to Kings' County Hospital (K.C.H.) Psychiatric Ward. This transfer was done without my approval or the Commissioner of the Office of Mental Hygiene (O.M.H.), or anyone designated by the Commissioner to do such transfer. N.Y.P.D. officers John Doe #s 3 and 4 did this.

2)      On 06-02-08, N.Y.P.D. officers fron the 73rd. precinct transfered me from K.C.H. Psych. Ward to B.H.C. Forensic Psych. Ward without my approval or the approval of the Commissioner of the Office of Mental Hygiene (O.M.H.) or anyone designated by the Commissioner to do such transfer. N.Y.P.D. officers John Doe #s 5 and 6 did this.

DEFENDANTS:      N.Y.C. Health & Hospital Corp.; Bellevue
                 Hospital Centre; Linda B. Curtis, Director of
                 B.H.C.; Dr. Jermey H. Colley; Dr . Ricardo Castaneda.

3)      On 06-02-08, when I was illegally transferred back to B.H.C. Forensic Psych. Ward, these defendants unlawfully held me captive there without following the proper procedure by adding the name(s) and shield #(s) of the officers who brought me there on the involuntiary admission form. That is page 1 of form 474 O.M.H.. This form MUST be completely filled out for my admission to be legitimate and proper.The admitting physician Dr. Jermey H. Colley was responsible for completely filling out this form. Page 2 of this said form MUST be filled out by another physician who is a member of the psychiatric staff, to confirm the findings of the admitting physician. There is no page 2 of form 474 O.M.H. in my entire medical records.

-2b-

DEFENDANTS:    Robert Morgenthau, N.Y. Cnty. D.A.; David Lauscher
               A.D.A. N.Y. Cnty.; Cheryl Leak, Clerical Associate
               III at B.H.C. Patients' **Records** Deartment.

   4)   These defendants, on or about 07-01-08 and on or about
09-29-08, moved my entire medical records between each other wit-
hout my approval or the subpoena from any court. In so doing they
violated my rights to privacy under New York State law and my
rights guranteed to me under the Constitution of the United States
of America.

DEFENDANT:    New York City Department of Corrections

   5)   From the early afternoon of 06-05-08 to the early after-
noon of 06-06-08, the New York City Department of Corrections had
me unlawfully detained in their jail after Hon. Judge Mondo of
Brooklyn Criminal Court granted my release from custody.

DEFENDANTS:   Dr. Rodzevski, nurses Fe Bonafe and Earlinda Acampado.

   6)   These defendants held and struck me in their attempt to
stop me from fleeing the illegal and unlawfull confines of B.H.C.
**Psychiatric** Ward.   This happened on June 09, 2008.

DEFENDANT:    John Doe #8, a patient in the hospital.

   7)   This defendant, after I had evaded the grasp of the two
nurses and the doctor, and was banging on the exit door trying to
get out, came up behind me and grabbed me in a choke hold around
my neck. The force of the hold was so tight that for about 4 to 5
day after the incident I was unable to swallow anything solid.
For the next six weeks after that I was still feeling the effects
of the choke-hold.

DEFENDANTS:   Perez and John Doe #s 9, 10, 11, 12, 13, all order-
              lies/Psych. techs.,

8)   These defendants rushed into the Psych. Ward and prounced on me after I saw them coming and surrendered by laying on the floor. I was beaten, taken to a room and tied to a bed with straps.

DEFENDANT:     Honorable Bonnie Wittner, Supreme Court Judge, Part61

          New York County.

9)   Judge Bonnie Wittner perjured herself on 10-06-09 when she said she authorized the movement of my medical records between the D.A.'s office and Bellevue Hospital. The minutes of my entire court-room transcript does not reflect such authorization and to this day I did'nt get the chance to oppose such authorization.

DEFENDANT:   John Doe # 7, Correction Officer N.Y.C.
     10)  This officer boarded me on the prison bus bound for Riker's Island on 06-05-08 after I was released from Brooklyn Criminal Court by a Judge.

DEFENDANT : Jane Doe # 1, Captin of N.Y.C. Correction Dep't..
     11)  This defendant released me from the custady of the Prison Ward Of B.H.C. on 06-060=08 to the civillian ward of the hospital.

DEFENDANT:   Jane Doe # 2, Nurse on B.H.C. Psych. Ward.
     12)  This defendant, on 06-09-08, while I was tied down with restraining straps to a bed, injected me twice with some psych meds.

-2d-

<u>FACTS</u>

1). ON 5-31-08, I was transferred from Long Island College Hospital (L.I.C.H.) in Brooklyn to Bellevue Hospital Centre (B.H.C.) Forensic Psych. Ward for observation and evaluation. I arrived at B.H.C. via Transcare Ambulance Service at 10:02 P.M.. I was escorted by N.Y.P.D. officers John Doe #1 and John Doe #2 from the 73rd. precinct.

2). On 06-01-08 at 9:25 a.m., after being examined and evaluated for over 11 hrs., I was treated and released to the custady of N.Y.P.D. officers John Doe #3 and John Doe #4 of the 73rd. precinct.

3). Dr. Robert Nadrich gave the officers instructions:**NO HOSPITAL ADMITTANCE: NO SUICIDE WATCH: NO TRANSFER TO PSYCH. HOSPITAL: NO MEDICATION PRESCRIBED: NO MEDICATION TO BE TAKEN: NO MEDICATION TO TRAVEL WITH PRISONER: NO REFERRAL TO PSYCH HOSPITAL.**

4). The doctor gave the officers a letter to a judge stating clearly that I did not need no further treatment at this time. Nurse Raquel Macaranas also gave the officers papers stating that I did not need **no medication, no medical referral and no psychiatric referral.**

5). After my release from B.H.C. at 9:25 a.m. on 06-01-08 the officers put me in the back of their police crusier and transported me straight to Kings County Hospital (K.C.H.) Psych. Ward; defying the instructions the doctor just gave them. This transfer was done without my approval or the authorization of the Commissioner of the Office of Mental Hygiene (O.M.H.), or someone designated by the Commissioner to do so.

6). After being at K.C.H. Psych. Ward for approx. 19 hrs.,
I was again, on 06-02-08 at 4:23 a.m. transferred back to B.H.C.
Psych. Ward without my approval or the approval of the Commissi-
oner of the Office of Mental Hygiene (O.M.H.) or someone desig-
nated by the Commissioner to do such transfer. This transfer
was done by N.Y.P.D. officers John Doe #s 5 and 6.

7). N.Y.P.D. officers John Doe #5 and John Doe #6, upon my Arrival
back at B.H.C. Psych. Ward, told the admitting physician Dr. jermey
H. Colley that after I was discharged from B.H.C. on the morning
of 06-01-08 I tried to hang myself in the jail cell of a police
precinct with a bed-sheet and that I was bi-polar.

8). Between the hrs. of 9:25 a.m. on 06-01-08 and 4:23 a.m.
on 06-02-08, I was not in any law enforcement establishment, I
did not have access to any bed-sheet and I did not try to hang
myself.

9). The log-book of any precinct, within the five boroughs
of New York City, can never show that I was ever there at anyti-
me between the hrs. of 9:25 a.m. on 06-01-08 and 4:23 a.m. on
06-02-08. The N.Y.P.D. officers transfered me from one hospital
to the next and back again without procedural due process.

10). For the police officers to be transfering me back and
forth like that without transfer papers accompanying me, with
some doctors' signature on the papers authorizing the transfer
is down right illegal, unconstitutional and against the law. Its
appearant that they were only doing it for their own personal
gratification.

11). On 06-02-08 when I was brought back to B.H.C. Psych.
Ward, the admitting physician Dr. Jermey H. Colley did not
comply with the requirements of section 9.39 of the Mental
Hygiene

-3b-

Law when he failed to have the name and shield number of the N.Y. P.D. officers who brought me there included in the involuntiary admittion papers. The law requires that the admitting physician Dr. Jermey H. Colley fill-out completely page 1 of form 474 of O.M.H.

12). After my retention ofover 48 hrs. at B.H.C. Psych. Ward, there was no other physician who is a member of the staff at B.H.C. to examine me and confirm the findingsof the admitting physician by completely filling out page 2 of form 474 of O.M.H.

13). The doctors failure to comply with the requirements of section 9.39 of M.H.L.mmakes my continued confinement there improper, illegal and unlawful. Therefore it is evident I was imprisoned in a psychiatric instution without due processof law. When government's action deprive a person of life, liberty or property without fair procedure, procedual due process is violated.

14). On 06-05-08 I was brought to court in Brooklyn to answer to the charges I was initially arrested for. Neithre the arresting officer or the alledge victin showed up for the appointed court appearance. The Hon. Judge Mondo restored my liberty by releasing me on my own recognance (R.O.R.).

15). Instead of letting me go home, correction officer John Doe #7, hand cuffed me and boarded me on a prison bus bound for Riker's Island. The officer told me I would be

-3b-

released fron the jail wherence I came from. In Riker's Island prison yard I was transfered to another bus which took me right back to Bellevue Hospital Center prison ward in hand-cuffs and leg-irons even though I was no longer a prisoner. I did not have no criminal hold on me.

16)  I spend the next 24-30 hrs. in jail under the watchfull eyes of the Dept. of corrections. I ate three meals there and on the afternoon of 06-06-08 a correction captin (Jane Doe #1) came to me and said that she was going to sign me out but the doctors on the civillian floor(18th.) will have to release me. I told the captin that a judge had already released me the day prior.

17)  IN any case New York City D.O.C. violated my rights by keeping me imprisoned in their facility without criminal reasons.

18).  Against my will and wishes the hospital continued to hold me hostage unlawfully on the 18th. floor. With intimidation, threats of physical force and use of physical force they continue to ply me with psycotic medications. I suffered, endured and tol-erated this treatment until I couldn't take anymore. On 06-09-08 I made an attempt to flee their confines as a last resort.

19).  I was held and struck by Dr.Rodzevski , nurse FE Bona-fe and Nurse Earlinda Acampado. A patient John Doe #8) even came up behind me after I had evaded the doctor and two nurses and grabbed me around the neck in a choke hold. The orderlies ( about five or six of them in all) held me down and beat me. Perez along with John Doe #9, John Doe #10, John Doe #11, John Doe#12 and John Doe #13 were all there. They took me into a room where

-3d-

they tied me to a bed and continued punching and slapping me. A
nurse, Jane Doe #2, came in the room and injected me twice with
psycotic drugs. After the second injection I was knocked out cold.

20)  I am now faced with criminal charges brought on by Bell-
evue Hospital and its staff.

21)  On or about 07-01-08 and on or about 09-29-08, Cheryl
Leak, Clerical Associate III employed by B.H.C. Patients' Records
Dep't. furnished my entire medical records to A.D.A. David Lauscher
of the New York County District Attorney's office.

22)  Before 07-01-08 and 09-29-08, there was never a subpoena
filed in any court by the D.A.'s off ice seeking my medical records
from B.H.C., and it was never brought ot my notice so that I could
oppose such release of all if not some of my records. At no time
did I ever the approval of the release of my medical records.

23)  The A.D.A. David Lauscher have now garnered information
from my B.H.C. records that lead him to know that I had prior dea-
lings with Kings County Hospital and St. Vincent's Hospital in
Manhattan.

24)  On 09-01-09 David Lauscher asked the Court to subpoena
my records from K.C.H. and St. Vincent's Hospital and the Judge
Bonnie Wittner granted such action.

25)  St. Vincent's Hospital and K.C.H. sent my entire medical
records directly to the D.A.'s office instead of to the Court for
an incamara inspection and determination of what portion of the
records were relevant to the on going criminal proceedings, as
required by law.

26)  On September 6, 2009, I wrote a letter to Judge Bonnie
Wittner asking her to disallow the A.D.A. from entering into the
proceedings any information from my medical records because such
information should be deemed as fruits of a poisonous tree. The
records were illegally and improperly acquired.

27)  I sent a copy of the letter to the Admin. Judge Michael
J. Obus. The Judge's attorney responded to me in short and advised
me to address my concern to Judge Bonnie Wittner .

-3e-

28)   On 10-06-09 I raised my concern to judge Bonnie Wittner and the Judge perjured herself by saying she authorized the A.D.A. to have my medical records from B.H.C.. I then asked the Judge when was it that she made such authorization and the Judge replied that she did not know. I told the judge that such action by the hospital and the A.D.A. was a criminal offense and the Judge then said, "sue them then".

29)   The Judge couldn't even provide me with a signed copy of such authorization.

30)   Without due process, N.Y.C. Health and Hospital Corp., New York City, N.Y.P.D., B.H.C. and its staff, New York City Dep't. of Corrections and its staff, New York County district Attorney's Office and Judge Bonnie Wittner have engaged in a series of acts that are in clear violation of my civil rights and my constitutional rights as a living, breathing human being that resides here on planet earth.

III                        INJURIES

I was unlawfully held captive in these defendants institution against my will. I was struck, beaten, tied down and forcefully injected with psycotic medications. I was held in a choke hold by a patient. This prevented me from swallowing solid foods for the next four to five days. Six weeks after that I was still having difficulties eating meals. At this time I am having problem with my vision because of the psycotic meds I was forced to take for a period of ten months. I've been imprisoned for the past 20 months. I will forever be mentally scarred by the trauma of the injustice I've suffered at the hands of these defendants.

IV.                     EXHAUSTION OF ADMINISTRATIVE REMEDIES
A.   Did your claim arise while you were confined in jail, prison or other correctional facility? Part of my claim happened while I was in jail and part while I was held in the civillian section of THE psych ward.

-3f-

If YES, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s). *Bellevue Hospital Prison Psych Ward / Civilian Psych Ward's, A.M.K.C. 18-18 Hazen St., G.M.D.C. 15-15 Hazen St., East Elmhurst N.Y. 11370*

B.   Does the jail, prison or other correctional facility where your claim(s) arose have a grievance procedure?

Yes ___✓___   No _____   Do Not Know _____

C.   Does the grievance procedure at the jail, prison or other correctional facility where your claim(s) arose cover some or all of your claim(s)?

Yes _____   No ___✓___   Do Not Know _____

If YES, which claim(s)? _____ *N/A ("Not Applicable")* _____

D.   Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose?

Yes _____   No ___✓___

If NO, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

Yes _____   No ___✓___

E.   If you did file a grievance, about the events described in this complaint, where did you file the grievance? _____ *N/A* _____

1.   Which claim(s) in this complaint did you grieve? ___ *N/A* ___

2.   What was the result, if any? ___ *N/A* ___

3.   What steps, if any, did you take to appeal that decision?  Describe all efforts to appeal to the highest level of the grievance process. _____
_____ *N/A* _____

F.   If you did not file a grievance:

1.   If there are any reasons why you did not file a grievance, state them here: _____
*According to NYC D.O.C., the issues complained of are not grievable through facility mechanism.*

2.   If you did not file a grievance but informed any officials of your claim, state who you

informed, when and how, and their response, if any: _Dr. Jermey H. Collen_
_at B.H.C.; verbally - no response. Correction Officer_
_who boarded me on bus to Rikers Island on 06/05/08-_
_verbally; no action taken. Civillian Psych. Ward on_
_06/06/08 & 06/09/08 ; verbally - no action taken._

G.   Please set forth any additional information that is relevant to the exhaustion of your administrative
remedies. _Letter to Bonnie Wittner S.I.I. dated 9.06.09._
_Complaining of A.D.A. having un-authorized copy of_
_my Medical Records; with a copy served to Michael_
_I. Obus Admin. judge of S.C. In short, Mc. Obus'_
_Court Attorney responded by instructing me to_
_raise the issue in Judge Bonnie Wittner's_
_Court room.   Cont'd. on extra sheet._

Note:   You may attach as exhibits to this complaint any documents related to the exhaustion of your
administrative remedies.


V.   **Relief:**

State what you want the Court to do for you (including the amount of monetary compensation, if any, that
you are seeking and the basis for such amount).  I am asking that the A.D.A. David Lauscher be precluded from using any part of my medical records in his prosecution of this case against me. My records in this matter should be classified as fruits of a poisonous tree. I am asking that my freedom be restored to me and this indictment be dismissed with prejudice. I am seeking twenty-five million dollars totally from all the defendants combined. (25,000,000.00) This is for punitive and compensatory damages I've sustained both mentally and physically. I'm seeking one million dollars in punitive damages (1,000,000.00) to punish these people for the wrong they did to me and twenty-four million dollars in compensatory damages ( 24,000,000.00) for traumatic pain and suffering I've endured both physically and mentally at the hands of these people. I will be forever scared by this injustice.

<u>IV.</u>             <u>EXHAUSTION OF ADMIN. REMEDIES CONT'D.</u>

<u>G</u>     I also submitted motions to the Court on 12-24-09 and
01-02-10, to dismiss the indictment in the interest of justice
and to supress the illegally acquired medical records the prosecu-
tion has in his possession. I also ask that the A.D.A. David
Lauscher be disqualified from this criminal case. The knowledge
he attained from the medical records will be prejudicial to the
integrity of the proceedings.

**VI.**   **Previous lawsuits:**

On
these
claims

A.   Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

Yes _____   No __✓__

B.   If your answer to A is YES, describe each lawsuit by answering questions 1 through 7 below. (If there is more than one lawsuit, describe the additional lawsuits on another sheet of paper, using the same format.)

1.   Parties to the previous lawsuit:

Plaintiff _____ N/A _____

Defendants _____ N/A _____

2.   Court (if federal court, name the district; if state court, name the county) __N/A__
_____

3.   Docket or Index number _____ N/A _____

4.   Name of Judge assigned to your case _____ N/A _____

5.   Approximate date of filing lawsuit _____ N/A _____

6.   Is the case still pending?  Yes _____   No __✓__

If NO, give the approximate date of disposition _____

7.   What was the result of the case? (For example:  Was the case dismissed?  Was there judgment in your favor?  Was the case appealed?) _____
_____ N/A _____

On
other
claims

C.   Have you filed other lawsuits in state or federal court otherwise relating to your imprisonment?

Yes _____   No __✓__

D.   If your answer to C is YES, describe each lawsuit by answering questions 1 through 7 below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same format.)

1.   Parties to the previous lawsuit:

Plaintiff _____ N/A _____

Defendants _____ N/A _____

2.   Court (if federal court, name the district; if state court, name the county) __N/A__
_____

3.   Docket or Index number _____

4.   Name of Judge assigned to your case _____ N/A _____

5.   Approximate date of filing lawsuit _____

6.   Is the case still pending?  Yes _____   No _____

If NO, give the approximate date of disposition _____ N/A _____

7.     What was the result of the case? (For example:  Was the case dismissed?  Was there judgment in your favor?  Was the case appealed?) _____

_____ N/A _____

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this _7th_ day of _February_, 2010.

Signature of Plaintiff _____

Inmate Number _700-0Y-00073_

Institution Address _G.M.D.C_

_15-15 Hazen Street_

_East Elmhurst_

_Queens, NY 11370_

Note:   All plaintiffs named in the caption of the complaint must date and sign the complaint and provide their inmate numbers and addresses.

I declare under penalty of perjury that on this _7th_ day of _February_, 2010, I am delivering this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for the Southern District of New York.

Signature of Plaintiff: _____

*Rev. 05/2007*                                        7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_Ronald Messam  700-08-60073_

_____

*(In the space above enter the full name(s) of the plaintiff(s)/petitioner(s).)*

- against -

_N.Y.C. Health & Hospital Corp. et al_

_____

_____

_____

*(In the space above enter the full name(s) of the defendant(s)/respondent(s).)*

_1 0_ **Civ.** _0291_ (_LAK_) (___)

**AFFIRMATION OF SERVICE**

I, _Ronald Messam_ , **declare under penalty of perjury** that I have
        *(name)*

served a copy of the attached _Amended Complaint # 1_
                              *(document you are serving)*

upon _Pro-Se Office  USDC  SDNY_ whose address is _500 Pearl St_
     *(name of person served)*

_Room 2130, New York NY 10007_
                *(where you served document)*

by _U.S. Postal Service_ .
   *(how you served document: For example - personal delivery, mail, overnight express, etc.)*

Dated: _Bronx_ , _NY_
        *(town/city)*   *(state)*

_Feb._ _9th_ , 20_10_
*(month)*  *(day)*  *(year)*

_____
**Signature**

_15-15 Hazen St_
**Address**

_East Elmhurst_
**City, State**

_New York 11370_
**Zip Code**

_____
**Telephone Number**

*Rev. 05/2007*

## NOTE

I respectfully submit this page of my rap sheet to show the time and date of my <u>arrest</u> and <u>arraignment</u> that brought me in contact with the police.  This case been dismissed and sealed.

⬇ **Cycle 25** ⬆
**Violent Felony Offense**

## Arrest/Charge Information
Arrest Date: May 30, 2008 03:24 pm (15:24:00)

| | |
|---|---|
| Name: | RONALD MESSAM |
| Date of Birth: | June 18, 1966 |
| Sex: | Male |
| Race: | Black |
| Age at time of crime/arrest: | 41 |
| Address: | 515 WILLIAMS AVE, BROOKLYN, NY |
| Fax Number | 39297 |
| Place of Arrest: | NYCPD 73 |
| Arrest Type: | Unknown |
| Date of Crime: | May 29, 2008 |
| Place of Crime: | NYCPD 73 |
| Criminal Justice Tracking No.: | 63003885M |
| Arresting Agency: | NYCPD PCT 073 |
| Arresting Officer ID: | 931681 |

Repository Inquiry for NYSID No: 06402503Q on 10/02/2008 02:57 pm        Page 31 of 33

| | |
|---|---|
| Arrest Number: | K08648982 |
| Arrest Charges: | |
| -- | Robbery-1st:Use/Threatens Use Of Dangerous Instrument |
| | PL 160.15 Sub 03      Class B    Felony Degree 1    NCIC 1299 |

## Court Case Information
-- **Court:** Kings County Criminal Court   **Case Number:** 2008KN040334

**Arraigned**  May 31, 2008

| | | | |
|---|---|---|---|
| -- Robbery-1st:Use/Threatens Use Of Dangerous Instrument | | | |
| PL 160.15 Sub 03 | Class B | Felony | NCIC 1299 |
| -- Robbery-3rd Degree | | | |
| PL 160.05 | Class D | Felony | NCIC 1299 |
| -- Grand Larceny 4th:Property Taken From Person | | | |
| PL 155.30 Sub 05 | Class E | Felony | NCIC 2399 |
| -- Menacing-2nd:Weapon | | | |
| PL 120.14 Sub 01 | Class A | Misdemeanor | NCIC 1316 |
| -- Criminal Possession Weapon-4th:Intent To Use | | | |
| PL 265.01 Sub 02 | Class A | Misdemeanor | NCIC 5212 |
| -- Petit Larceny | | | |
| PL 155.25 | Class A | Misdemeanor | NCIC 2399 |
| -- Criminal Possession Stolen Property-5th Degree | | | |
| PL 165.40 | Class A | Misdemeanor | NCIC 2804 |
| -- Attempted Assault 3rd Degree: With Intent To Cause Physical Injury | | | |
| PL 120.00 Sub 01 | Class B | Misdemeanor | NCIC 1399 |
| -- Harassment-2nd Degree: Physical Contact | | | |
| PL 240.26 Sub 01 | | Violation | NCIC 7099 |

**Initial Report Of Docket Number** May 31, 2008

**MR. RONALD MESSAM**
#700-08-00073
15-15 Hazen Street
East Elmhurst, N.Y. 11370

Honorable Judge Bonnie Wittner
New York County Supreme Court
Part 61                                        September 6, 2009
100 Centre Street
New York, New York 10013

RE: <u>Indictment No.: **4750/2008**</u>

(Unlawful & Illegal Practice of the A.D.A.)

Your Honor:

I respectfully ask of the Court to disallow the A.D.A.
from using my Medical Records in these proceedings.

The reason why I request such action is because the pro-
secution had my Medical Records from Bellevue Hospital in his
possession since Sept. 29, 2008. How he came to be in possession
of these records is beyond me - because I know for a fact that
Mr. Lauscher did not go through the legal, lawful and proper
procedure to acquire these records.

Now, Your Honor, the A.D.A. has garnered information from
these records that lead him to know that I had prior dealings
with St. Vincent and Kings County Hospitals. The A.D.A. now wants
the Court to allow him to use my records from these hospitals
to aid him in the prosecution of this case.

My Civil Rights and Constitutional Rights were grossly
violated by the staff of Bellevue Hospital and the prosecutor's
office when they, without authorization from the Courts, moved
my Medical Records between each other.

Your Honor, I know that the Courts don't generally reverse
rulings they have already made, but, in this situation, I'm
asking the Court to make an exception because of the fact that

- 1 -

the Court was not aware of the underhanded dealing of the A.D.A. and, therefore, was blindsided by it.

I also would like the Court to know that throughout these proceedings, the A.D.A. has engaged in numerous underhanded acts that my Court-appointed attorneys have failed miserably to point out to the Court. By way of unfair dealings, is not how justice is served.

Any information from my Medical Records brought into these proceedings by the prosecutor should be regarded as fruit of a poisonous tree.

Thank you for your consideration in this matter.


Respectfully,

RONALD MESSAM

cc: files
    Adm. Judge


SWORN TO BEFORE ME THIS

___8___ DAY OF September, 2009.

_____
NOTARY PUBLIC

Marybeth Campfield
Notary Public, State of New York
No. 02CA6171492
Qualified in Queens Cty, Comm. Exp. 7/23/11

Supreme Court
of the
State of New York



MICHAEL J. OBUS
ADMINISTRATIVE JUDGE
SUPREME COURT, CRIMINAL TERM
FIRST JUDICIAL DISTRICT

CHAMBERS
100 CENTRE STREET
NEW YORK, NEW YORK 10013

September 16, 2009

Mr. Ronald Messam
#700-08-00073
15-15 Hazen Street
East Elmhurst, New York 11370

Re: People v. Ronald Messam
Indictment No. 4750/2008

Dear Mr. Messam:

Judge Michael J. Obus has received the copies of your September 6 and 11, 2009, letters to Judge Bonnie Wittner.  Please raise the concerns you outlined in those letters in that Part.

Very truly yours,

Daniel Rosen
Court Attorney to the
Hon. Michael J. Obus
Administrative Judge

cc: Hon. Bonnie Wittner

416

Form OMH 474 (2-94)

State of New York
Office of Mental Health

| Patient's Name (Last, First, M.I.) | "C" No. |
|---|---|

**EMERGENCY ADMISSION**
**Section 9.39 Mental Hygiene Law**

Patient's Name (Last, First, M.I.)    "C" No.
Ma...  1197663
MESSAN, RONALD
06/18/66   M
A/C   28130177   Date of Birth  06/02/66 06/18/1966
PCP:
Facility Name  Kellawaric Steven  BHPW   Unit/Ward No.

## I. General Provisions for Emergency Admission

A. In order for a person to be admitted to a hospital according to Section 9.39 of the Mental Hygiene Law, all the following requirements must be met:
   1. The hospital must be approved by the Commissioner of Mental Health to receive and retain patients according to this Section;
   2. The person must be alleged to have a mental illness for which immediate observation, care, and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or herself or others. "Likelihood to result in serious harm" means:
      —a substantial risk of physical harm to the person as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that the person is dangerous to himself or herself ("other conduct" shall include the person's refusal or inability to meet his or her essential need for food, shelter, clothing, or health care, provided that such refusal or inability is likely to result in serious harm if there is not immediate hospitalization), or
      —a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm.
   3. A staff physician of the admitting hospital must examine the person and find that the person meets the standard for admission under this Section. The physician then completes this Form, OMH 474, Emergency Admissions.

B. A person who is alleged or appears to be mentally ill may be taken into custody, transported, or removed to a hospital approved to accept emergency admissions, according to the following sections of the Mental Hygiene Law:
   —Section 9.41 - Powers of Certain Peace Officers and Police Officers, Form OMH 474A/476A, I
   —Section 9.43 - Powers of Courts - Form OMH 465, Civil Order for Removal to Hospital
   —Section 9.45 - Powers of Directors of Community Services, Form OMH 474A/476A, II
   —Section 9.55 - Powers of Qualified Psychiatrists, Form OMH 474A/476A, III
   —Section 9.57 - Powers of Emergency Room Physicians, Form OMH 474A/476A, IV

C. On admission, the person will be given a written notice of status and rights as a patient admitted according to MHL Section 9.39. This notice will also be given to the Mental Hygiene Legal Service and up to three other persons designated by the person admitted.

   If a person admitted according to this Section is to be retained in the hospital for more than 48 hours, another physician, who is a member of the psychiatric staff of the hospital, must examine the person and confirm the admitting physician's findings by completing page 2 of this form (OMH 474).

   Within 15 days of admission, if it is determined that the person is not in need of involuntary care and treatment, s/he shall be discharged unless s/he is suitable and agrees to remain as a voluntary patient. If the person is in need of continued inpatient care and treatment, and is not suitable or will not agree to remain as a voluntary patient, s/he may be retained beyond 15 days only by completion of an application and two medical examinations as required for admission according to MHL Section 9.27 - Involuntary Admission on Medical Certification.

## II. Record of Admission

Name

A. The above-named person was brought to this hospital by:

| Title/Badge No. (as appropriate) | Address | Phone |
|---|---|---|

| Relationship to Person | Address of Person | Time of arrival at hospital: | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | 0 6 | 0 2 | 0 6 | 0 4 | 7 3 | ☐ A.M. ☐ P.M. |
| | | MONTH | DAY | YEAR | HOUR | MINUTE | |

B. Circumstances which led to the person being brought to this hospital:   (If applicable) Person was taken into custody, transported, or removed to this hospital in accordance with MHL Section _____.

41yo man attempted to hang self in NYPD precinct, reported history of (Bipolar Disorder)

C. I HAVE EXAMINED THE ABOVE-NAMED PERSON PRIOR TO ADMISSION AND FIND THERE IS REASONABLE CAUSE TO BELIEVE THAT THE PERSON HAS A MENTAL ILLNESS FOR WHICH IMMEDIATE OBSERVATION, CARE AND TREATMENT IN A MENTAL HOSPITAL IS APPROPRIATE AND WHICH IS LIKELY TO RESULT IN SERIOUS HARM TO HIMSELF OR HERSELF OR OTHERS.

| Physician's Signature | | | | | | |
|---|---|---|---|---|---|---|
| J. Colly MD Colley 53745 | 0 6 | 0 2 | 0 8 | 1 1 | 3 0 | ☒ A.M. ☐ P.M. |
| | MONTH | DAY | YEAR | HOUR | MINUTE | |

416

Form OMH 474 (2-94)

State of New York
Office of Mental Health

| Patient's Name (Last, First, M.I.) | "C" No. |
|---|---|

MESSAN, RONALD      1197663

Sex: 06/18/66   M   Date of Birth: 06/02/66

ACT# 28130177

PCP

Facility Name: PSYCHIATRIC STEVEN BHPW      Chart No.

## EMERGENCY ADMISSION
## Section 9.39 Mental Hygiene Law

## I. General Provisions for Emergency Admission

A. In order for a person to be admitted to a hospital according to Section 9.39 of the Mental Hygiene Law, all the following requirements must be met:

1. The hospital must be approved by the Commissioner of Mental Health to receive and retain patients according to this Section;

2. The person must be alleged to have a mental illness for which immediate observation, care, and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or herself or others. "Likelihood to result in serious harm" means:
   —a substantial risk of physical harm to the person as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that the person is dangerous to himself or herself ("other conduct" shall include the person's refusal or inability to meet his or her essential need for food, shelter, clothing, or health care, provided that such refusal or inability is likely to result in serious harm if there is not immediate hospitalization), or
   —a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm.

3. A staff physician of the admitting hospital must examine the person and find that the person meets the standard for admission under this Section. The physician then completes this Form, OMH 474, Emergency Admissions.

B. A person who is alleged or appears to be mentally ill may be taken into custody, transported, or removed to a hospital approved to accept emergency admissions, according to the following sections of the Mental Hygiene Law:
   —Section 9.41 - Powers of Certain Peace Officers and Police Officers, Form OMH 474A/476A, I
   —Section 9.43 - Powers of Courts - Form OMH 465, Civil Order for Removal to Hospital
   —Section 9.45 - Powers of Directors of Community Services, Form OMH 474A/476A, II
   —Section 9.55 - Powers of Qualified Psychiatrists, Form OMH 474A/476A, III
   —Section 9.57 - Powers of Emergency Room Physicians, Form OMH 474A/476A, IV

C. On admission, the person will be given a written notice of status and rights as a patient admitted according to MHL Section 9.39. This notice will also be given to the Mental Hygiene Legal Service and up to three other persons designated by the person admitted.

If a person admitted according to this Section is to be retained in the hospital for more than 48 hours, another physician, who is a member of the psychiatric staff of the hospital, must examine the person and confirm the admitting physician's findings by completing page 2 of this form (OMH 474).

Within 15 days of admission, if it is determined that the person is not in need of involuntary care and treatment, s/he shall be discharged unless s/he is suitable and agrees to remain as a voluntary patient. If the person is in need of continued inpatient care and treatment, and is not suitable or will not agree to remain as a voluntary patient, s/he may be retained beyond 15 days only by completion of an application and two medical examinations as required for admission according to MHL Section 9.27 - Involuntary Admission on Medical Certification.

## II. Record of Admission

Name

A. The above-named person was brought to this hospital by:

| Title/Badge No. (as appropriate) | Address | Phone |
|---|---|---|

| Relationship to Person | Address of Person | Time of arrival at hospital: | MONTH | DAY | YEAR | HOUR | MINUTE | |
|---|---|---|---|---|---|---|---|---|
| | | | 0 6 | 0 2 | 0 6 | 04 | 73 | ☐ A.M. ☐ P.M. |

B. Circumstances which led to the person being brought to this hospital:

(If applicable) Person was taken into custody, transported, or removed to this hospital in accordance with MHL Section _____

41yo man attempted to hang self in NYPD precinct, reported history of (Bipolar Disorder)

C. I HAVE EXAMINED THE ABOVE-NAMED PERSON PRIOR TO ADMISSION AND FIND THERE IS REASONABLE CAUSE TO BELIEVE THAT THE PERSON HAS A MENTAL ILLNESS FOR WHICH IMMEDIATE OBSERVATION, CARE AND TREATMENT IN A MENTAL HOSPITAL IS APPROPRIATE AND WHICH IS LIKELY TO RESULT IN SERIOUS HARM TO HIMSELF OR HERSELF OR OTHERS.

| Physician's Signature | | MONTH | DAY | YEAR | HOUR | MINUTE | |
|---|---|---|---|---|---|---|---|
| _____ MD COLEY 53745 | | 0 6 | 0 2 | 0 8 | 11 | 30 | ☒ A.M. ☐ P.M. |

Form OMH 474 (2-94)

416

State of New York
Office of Mental Health

| | Patient's Name (Last, First, M.I.) | "C" No. |
|---|---|---|

**EMERGENCY ADMISSION**
**Section 9.39 Mental Hygiene Law**

MESSAN, RONALD        1197663
06/08/66    M
ACT   28130177   06/02/08
PSP
Facility Name:  Trellauric Steven  BHPW

## I.  General Provisions for Emergency Admission

A.  In order for a person to be admitted to a hospital according to Section 9.39 of the Mental Hygiene Law, all the following requirements must be met:

1.  The hospital must be approved by the Commissioner of Mental Health to receive and retain patients according to this Section;

2.  The person must be alleged to have a mental illness for which immediate observation, care, and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or herself or others. "Likelihood to result in serious harm" means:
  —a substantial risk of physical harm to the person as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that the person is dangerous to himself or herself ("other conduct" shall include the person's refusal or inability to meet his or her essential need for food, shelter, clothing, or health care, provided that such refusal or inability is likely to result in serious harm if there is not immediate hospitalization), or
  —a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm.

3.  A staff physician of the admitting hospital must examine the person and find that the person meets the standard for admission under this Section. The physician then completes this form, OMH 474, Emergency Admissions.

B.  A person who is alleged or appears to be mentally ill may be taken into custody, transported, or removed to a hospital approved to accept emergency admissions, according to the following sections of the Mental Hygiene Law:
  —Section 9.41 - Powers of Certain Peace Officers and Police Officers, Form OMH 474A/476A, I
  —Section 9.43 - Powers of Courts - Form OMH 465, Civil Order for Removal to Hospital
  —Section 9.45 - Powers of Directors of Community Services, Form OMH 474A/476A, II
  —Section 9.55 - Powers of Qualified Psychiatrists, Form OMH 474A/476A, III
  —Section 9.57 - Powers of Emergency Room Physicians, Form OMH 474A/476A, IV

C.  On admission, the person will be given a written notice of status and rights as a patient admitted according to MHL Section 9.39. This notice will also be given to the Mental Hygiene Legal Service and up to three other persons designated by the person admitted.

If a person admitted according to this Section is to be retained in the hospital for more than 48 hours, another physician, who is a member of the psychiatric staff of the hospital, must examine the person and confirm the admitting physician's findings by completing page 2 of this form (OMH 474).

Within 15 days of admission, if it is determined that the person is not in need of involuntary care and treatment, s/he shall be discharged unless s/he is suitable and agrees to remain as a voluntary patient. If the person is in need of continued inpatient care and treatment, and is not suitable or will not agree to remain as a voluntary patient, s/he may be retained beyond 15 days only by completion of an application and two medical examinations as required for admission according to MHL Section 9.27 - Involuntary Admission on Medical Certification.

## II.  Record of Admission

Name

A.  The above-named person was brought to this hospital by:

| Title/Badge No. (as appropriate) | Address | Phone |
|---|---|---|

| Relationship to Person | Address of Person | Time of arrival at hospital: | MONTH | DAY | YEAR | HOUR | MINUTE | |
|---|---|---|---|---|---|---|---|---|
| | | | 0 6 | 0 2 | 0 8 | 04 | 73 | ☐ A.M. ☐ P.M. |

B.  Circumstances which led to the person being brought to this hospital:

(If applicable) Person was taken into custody, transported, or removed to this hospital in accordance with MHL Section _____

41yo man attempted to hang self in NYPD precinct, reported history of (Bipolar Disorder)

## C.  I HAVE EXAMINED THE ABOVE-NAMED PERSON PRIOR TO ADMISSION AND FIND THAT THERE IS REASONABLE CAUSE TO BELIEVE THAT THE PERSON HAS A MENTAL ILLNESS FOR WHICH IMMEDIATE OBSERVATION, CARE AND TREATMENT IN A MENTAL HOSPITAL IS APPROPRIATE AND WHICH IS LIKELY TO RESULT IN SERIOUS HARM TO HIMSELF OR HERSELF OR OTHERS.

| Physician's Signature | MD COLEY 53748 | MONTH | DAY | YEAR | HOUR | MINUTE | |
|---|---|---|---|---|---|---|---|
| | | 0 6 | 0 2 | 0 8 | 11 | 30 | ☒ A.M. ☐ P.M. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK : PART 61
------------------------------------------------

THE PEOPLE OF THE STATE OF NEW YORK,

     - against -

RONALD MESSAM,

              Defendant.
------------------------------------------------

**NOTICE OF MOTION
TO SUPPRESS
EVIDENCE**

**Ind. No. : 4750-2008**

S I R S :

    **PLEASE TAKE NOTICE** that upon the annexed affidavit of

**RONALD MESSAM**, Defendant, In Propria Persona, and upon the in-

dictment filed against the above-named Defendant in this Court

on the 7 day of October, 2008, and upon the arraignment had here-

in, the undersigned will move this Court at a Part 61 thereof

to be held in the Courthouse located 100 Centre Street, New

York, N.Y. on the 26 th day of January, 2010, at 9:30 o'clock

in the forenoon or as soon thereafter as Defendant/counsel can

be heard for an Order suppressing documentary evidence pursuant

to Section 710.20 (and 255.20 [4] & [5]) upon the grounds that

such evidence was illegally obtained and in violation of DUE

PROCESS as guaranteed by N.Y. State and the U.S. Constitutions,

and for such other and further relief as the Court may deem

just and proper.

Dated: 2^nd^ Jan., 2010.

TO: Hon. R. Morgenthau
    NY. Co. Dist. Atty.

Respectfully,

**RONALD MESSAM**
Defendant **in pro. per.**
#700-08-00073
15-15 Hazen Street
East Elmhurst, N.Y. 11370

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK : PART 61
-------------------------------------------
THE PEOPLE OF THE STATE OF NEW YORK,

     - against --

RONALD MESSAM,
         Defendant.
-------------------------------------------

AFFIDAVIT IN SUPPORT
OF MOTION TO SUPRESS
EVIDENCE

Ind. No.  : 4750/2008

STATE OF NEW YORK     )
                 ) ss.:
COUNTY OF BRONX     )

    RONALD MESSAM, being duly sworn, deposes and says:

    1) I am the Defendant, in propria persona, and am person-
ally familiar with the facts hereinafter stated.

    2) This application is made upon the grounds that suppress-
ion of the medical records the prosecution intends to bring into
the proceedings, the testimony of any witness(es) whose name(s)
are in the medical records and the A.D.A. intends to call as witn-
ess , and the disqualification of the prosecuting A.D.A. David
Lauscher is required in the furtherance of justice Pursuant to
Section 710.20 and 255.10 of the Criminal Procedure Law (C.P.L.)
and Section(s) 3101 (a) (b); 3102; 3103 (a) (c); 3107; 3111 and
3120 of Civil Pratice Law & Rules (C.P.L.R.) and N.Y.S. Mental
Hyigene Law (M.H.L.) 33.13 (c); Federal Privacy Act 5USC §552 a,
in that there exists compelling factors/circumstances clearly
demonstrating that the prosecution of the defendant upon indict-
ment No. 4750/2008 will constitute or result in injustice.

-1-

## ILLEGAL AQUISITION OF MEDICAL RECORDS

3)  The A.D.A. David Lauscher and Cheryl Leak an employee at Bellevue hospital Centre Patients' Records Dep't. as a Clerical Associate III, engaged in the act of transfering the Defendant's (me) entire medical records from the hospital to the New York Cnty.'s D.A.'s office without a subpoena from the courts or the without the knowlege of the Defendant or the attorney representing the defendant in the criminal proceedings. ( see Beiny v. Wynyard 517 N.Y.S. 2d 474, A.D. 1Dept.(1987); Andall v. La Claire, N.Y.S. Division of Parole, N.Y.S. D.O.C. 2008 NY Slip Op 51788U; 2008 N.Y. Misc. Lexis 5116; USCA Const. Amends. 1, 4, 5, 6 and 14.

4)  Medical records obtained by the A.D.A. David Lauscher from Bellevue Hospital Centre (B.H.C.), in a manner clearly in violation of the proper pratice of law in this State is gross violation of the code of conduct.

5)  The A.D.A. have used these records extensively to garner information as to the defendant's prior dealings with two other hospitals in the past. (St. Vincent's in Manhattan and Kings County Hospital).

6)  The A.D.A. have now subpoena the defendant's entire medical records from these two other hospitals. These hospitals, likewise Bellevue hospital, have sent the defendant's <u>entire medical records directly to the D.A.'s office, instead of to the Court for an " in-camara inspection and determination of what portion of the records is relevant and material</u>" to the criminal proceedings. (see State of New York- Office of Mental Retardation and Development Disabilities vs. Eugene Mastracci 77 A.D. 2d. 473; 433 N.Y.S. 2d

946; 1980    N.Y. App. Div. LEXIS 13368.

7) Other than complying with the rules of acquiring evidence, the A.D.A. chose to chart a course which he knows to be at variance with acceptable discovery pratice so as to obtain by stealth and deceit that which could not be readily obtained through proper channels.

8) Like-wise, Cheryl Leak, Clerical Associate III at B.H.C. Patients' Records Dep't., who is aware of the rules governing the Confidentiality of Patients' Records, violated the rules by releasing the entire medical records (542 pages) which contain pertinent information independent of psychiatry, directly to the D.A.'s office.

9) Because of the A.D.A. David Lauscher's and B.H.C.'s willfull avoidance of the fundamental and easily understood rules governing the " Rules of Discovery" and Patients' Privacy Act, the integrity of the criminal proceedings against the defendant is now grossly compromised. Suppression of the improperly obtained records is warranted Pursuant to C.P.L.R. 3103 (c). ( See Monserrate Vs. Upper Court Street Book Store, Inc. 49 NY 2d 306, 425N.Y.S. 2d 304, 401 N.E. 2d 414 (1980).

10) Thus, had the defendant been notified of the disclosure demand of his medical records from B.H.C., the defendant would have moved to oppose the release of the medical portion if not all of the records the A.D.A. seek, Pursuant to C.P.L.R. 3103 (a). Indeed had the A.D.A.'s disclosure demand came to the Court's attention it is to be expected that the Court on Its' own initiative would have acted to prevent the unauthorized release of privilaged information. ( See C.P.L.R. 3103 (a), 4503 (a).

-3-

11) "...when that which is not obtainable has been obtained, the only appropriate judicial response is to attempt, thruogh suppression, to restore the status quo prior to the unauthorized disclosure." Suppression then, in this case, is not only appropriate Pursuant to C.P.L.R. 3103 (c) to protect the defendants interest, which has in fact been prejudiced, it is in addition necessary to preserve the confidence of the DOCTOR/PATIENT relationship and to prevent the longstanding policy which the privilage here in question, exist to protect.

12) The D.A.'s office and B.H.C. acquires no special right to disclose publicly the private information of the defendant by claiming it would be helpfull or necessary in prosecuting the case against the defendant. The Court of Appeals have stated that applicable rule well in Cirel vs. 80 Pine Street Corp. 35 N.Y. 2d 113,117; 359 N.Y.S. 2d 1; 316 N.E. 2d 301 (1974) C.P.L.R. 3101(b)

13) The highly improper manner in which the <u>entire medical records</u> were obtained, combined with their use by the A.D.A. to the defendant's detriment, should constitute a sufficient basis for suppression Pursuant to C.P.L.R. 3103 (c).

14) This disclosure of, if not all, but the medical portion of the defendant's hospital records could have been prevented by the defendant, had the defendant's oppertunity to do so not been subverted by the A.D.A. and B.H.C..

15) By the willfull disregard of the procedual rules, deceit and covert acquisition of otherwise unobtainable private material , suppression is significant to deter such conduct in the future, and insure the integrity of the process.

## DISQUALIFICATION OF THE A.D.A.
### DAVID LAUSCHER

16)  What knowlege the A.D.A. have gained, have been acqu-
ired by improper means and much of what has been learned was
intended to go no further than the confines of B.H.C., K.C.H.,
and St. Vinecnt's hospitals.

17)  Though the documents may be effectively supressed, the
information gathered from them cannot be easily contained. The
defendant simply do not know if the information acquired from the
hospitals' records will subsequently be used by the A.D.A..

18)  For even if the A.D.A. attempts to abide by the Court's
suppression order, there is no way of assuring that the tainted
knowlege will not subtly influence the future conduct of the A.D.A.
in the on-going criminal proceedings. ( See Emle Industries,Inc.
vs. Patentex Inc. 478 F. 2d 562; 570-72 2d. Cir. ( 1973).

19)  While the amount of tainted information may be 'finite'
it is not small. As noted, the documents are the records from
three hospitals, which reflects the business the defendant did with
them for almost ten years.

20)  In direct or indirect reliance upon these records, the
A.D.A. obtained other information during the extended period of
time he had the defendant's records in his possession.

21)  It would be virtually impossible to prevent what has been
supressed physically from playing some role in the A.D.A's pros-
ecution of the case against the defendant. Thus, as a practical
matter, it is very necessary to disqualify A.D.A. David Lauscher
in order to assure, insofar as is possible the fairness of the
proceedings. ( See Desbiens vs. Ford Motor Co. 81 A.D. 2d 707;

-5-

439 N.Y.S. 2d 452  -1981-.

22)  What is to be prevented is the misuse of information disclosed in confidence between DOCTOR AND PATIENT. ( See Board of Education vs. Nyquist 590 F 2d 1241, 1246 [2d Cir. 1977] ) See eg. Fond of Fonds, Ltd. vs. Arthor Andersen & Co. 576 F 2d 225 [ 2d Cir. 1977 ] ; Cinima 5 Ltd. vs. Cinerama, Inc. 528 F. 2d 1384 [ 2d Cir. 1976 ].

23)  Unlike most disqualification situations where the knowledge eventually requiring disqualification is acquired innocently by the A.D.A. in the course of prosecuting a case, **here** the knowledge has been obtained by improper design and the use **of** information is not merely a prospect to be avoided by prophylactic disqualification, but an accomplished fact. In these respects the abuse with which the defendant is presently concerned is far more serious than that which is ordinarily addressed or sought to be averted where disqualification is ordered. ( Cf. Greene vs. Greene, 47 N.Y. 2d 447,453; 418 N.Y.S. 2d 379; 391 N.E. 2d 1355 [1979]

24)  A course of activity exibiting a complete and deliberate disregard for the process by which discovery is to be conducted and a total insensitivity to the strict ethical and legal limitations placed upon the disclosure and use of privilaged material, to impose a sanction short of disqualification would be a treat to the conduct at issue with a degree of lenity practically inviting its recurrence.

25)  Pursuant to the provisions of § 255 (3) and (4), the Defendant requests the Court liberally construe this motion in the light most favorable to the Defendant and excuse any

-6-

non-prejudicial errors, etc. by means of C.P.L.R. 2101, as Defendant is a layperson in the workings of the law and is seeking JUSTICE.

26) No previous application for the relief sought herein has been made.

WHEREFORE, your deponent prays for an order suppressing the docunemtary evidence, the testimony of the name(s) of the people in the documents the A.D.A. intends to call as witness and the disqualification of A.D.A David Lauscher and for further relief that may be just and proper in the premisis.

Respectfully requested,

RONALD MESSAM
Defendant, In Pro. Per.
# 700-08-00073
15-15 Hazen Street
East Elmhurst, N.Y. 11370

Swarn to bfore me
this 2 day of January 2010
Mary beth Campfield

Marybeth Campfield
Notary Public, State of New York
No. 02CA6171492
Qualified in Queens Cty, Comm. Exp. 7/23/11

-7-

# AFFIDAVIT OF SERVICE

STATE OF NEW YORK)

                ss:

COUNTY OF BRONX )

_Ronald Messam_, being duly sworn, deposes and says:

That I have on this _5th_ day of _January_, 20_00_, placed and submitted in the postal receptacle in the New York City Correctional Facility known as **the George Motchan Detention Center, 15-15 Hazen Street, East Elmhurst, New York 11370** a Notice of _Motion to Suppress & Affidavit in Support_ to be duly mailed via the United States Postal Service to the following parties in the above action:

_Clerk of Court Pt. 61_
_100 Centre Street_
_New York, N.Y. 10013_

_David Lauscher No. D.A_
_District Attorney's Office_
_One Hogan Place_
_New York, N.Y. 10013_

_Brett J. Wolfe, Esq._
_110 Wall Street, 11th floor_
_New York, N.Y. 10005_

Respectfully submitted,

_Ronald Messam_
_708-08-00073_
_15-15 Hazen St._
_East Elmhurst_
_New York 11370_

Sworn to before me this
_5_ day of _January_, 20_00_

_Mary Beth Carlos_
NOTARY PUBLIC

Marybeth Campfield
Notary Public, State of New York
No. 02CA6171492
Qualified in Queens Cty, Comm. Exp. 7/23/11

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK : PART 61
------------------------------------------

THE PEOPLE OF THE STATE OF NEW YORK,

       -- against --

RONALD MESSAM,

            Defendant.

------------------------------------------

NOTICE OF MOTION
TO DISMISS
INDICTMENT IN THE
INTEREST OF JUSTICE

Ind. No.: 4750-2008

S I R S :

       Please take notice that upon the annexed duly verified affidavit of **RONALD MESSAM**, Defendant In Propria Persona, and upon the indictment filed against the above-named Defendant in this court on the 7 day of October, 2008, and upon the arraignment had herein, the undersigned will move this Court at a Part 61 thereof to be held in the Courthouse located 100 Centre Street, New York, N.Y. on the 24 day of November, 2009, at 9:30 o'clock in the forenoon or as soon thereafter as Defendant/counsel can be heard for an Order dismissing the indictment pursuant to Section 210.20 of the Criminal Procedure Law upon the ground that dismissal of the indictment is required in the interest of justice, pursuant to Criminal Procedure Law, Section 210.40, and upon the violations of the United States Constitutional Amendments numbered: First, Fourth, Fifth, Sixth and Fourteenth, and for such other and further relief as to the Court may seem just and proper.

Dated: Nov. 20 , 2009.

To: Hon. R. Morgenthau
     N.Y. Co. Dist. Atty.

Respectfully,

RONALD MESSAM
#700-08-00073
15-15 Hazen Street
East Elmhurst, N.Y. 11370

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK : PART 61
------------------------------------

THE PEOPLE OF THE STATE OF NEW YORK,

     - against -

**RONALD MESSAM,**

         Defendant.
------------------------------------

AFFIDAVIT IN SUPPORT
OF MOTION TO DISMISS
INDICTMENT IN THE
INTEREST OF JUSTICE

Ind. No.: 4750-2008

STATE OF NEW YORK     )
                     )   ss.:
COUNTY OF BRONX      )

     **RONALD MESSAM,** being duly sworn, deposes and says:

     1) I am the Defendant, <u>in propria persona</u>, and am person-ally familiar with the facts hereinafter stated.

     2) This application is made upon the ground that dismissal of the indictment is required in the furtherance of justice pursuant to Sections 210.20 and 210.40 of the Criminal Proced-ure Law, in that there exist compelling factors/circumstances clearly demonstrating that prosecution of Defendant upon such indictment will constitute or result in injustice.

     3) Bellevue Hospital, on or about 7/1/08 and on or about 9/29/08, turned-over my entire Medical Records to the New York County District Attorney's Office without my approval or a sub-poena from the court(s). <u>SHWENK v. KAVANAUGH</u>, 1998,4 F. Supp. 2d 110; USCA Const. Amends. 1, 4, 5, 6 and 14.

     4) Kings County Hospital and St. Vincent's Hospital, on or about 9/1/09, sent my Medical Records directly to the D.A.'s Office. (See, <u>SHWENK</u>, <u>supra</u> and U.S. Const. Amend. 14)

- 1 -

5) The N.Y.P.D., on or about 6/1/08, transferred me from Bellevue Hospital Forensic Ward to Kings County Hospital Psychiatric Ward, without the authorization of the Commissioner of the Office of Mental Hygiene, or someone designated by the Commissioner to do so. SAVASTANO v. NURNBERG, 77 N.Y. 2d 300 (Ct. App. 1990); M.H.L. § 29.11; 14 NYCRR 517-4; USCA Const. Amends. 14 & 5.

6) The N.Y.P.D., on 6/2/08, transferred me from Kings County Hospital Psychiatric Ward to Bellevue Hospital Psychiatric Ward, without the authorization of the Commissioner of the Office of Mental Hygiene or someone designated by the Commissioner to do so. SAVASTANO, supra; MHL § 29.11; 14 NYCRR 517-4; USCA Const. Amends. 5 & 14.

7) The admitting physician at Bellevue Hospital Center failed to comply with the requirements of Section 9.39 of Mental Hygiene Law, when he did not incorporate the name and shield number of the Police Officer who brought me there. (i.e.: page number one of Form 474 OMH) PEOPLE ex rel. NOEL B. v. JONES, 230 A.D. 2d 809 (A.D. 2 Dept. 1996); MHL §§ 9.39(b), 9.27.

8) There was no other physician employed as a staff at Bellevue Hospital to examine me after I was retained for over 48 hours, and confirm the findings of the admitting physician and fill-out completely, page 2 of Form 474 OMH, as required by law. (See, MHL §§ 9.27 and 9.39) USCA Const. Amends. 5 & 14.

- 2 -

9) After I was released from custody by Judge Mondo in Brooklyn Criminal Court on 6/5/08, the Department of Correction had me falsely imprisoned in the Prison Ward of Bellevue Hospital until the afternoon of 6/06/08, without an outstanding warrant or criminal charge against me. (See, AKANDE v. THE CITY OF NEW YORK, 275 A.D. 2d 671, A.D. 1st. Dept. 2000; USCA Const. Amends. 4, 5, 6.) **Also,** PEOPLE v. MAKSYMENKO, 105 Misc.2d 368

10) Pursuant to the provisions of C.P.L. § 255 (3) and (4), Defendant requests the Court liberally construe this motion in the light most favorable to Defendant and excuse any non-prejudicial errors, etc. by means of CPLR 2101, as Defendant is a layperson in the workings of law, and is seeking justice.

11) No previous application for the relief sought herein has been made.

**WHEREFORE,** your deponent prays for an Order dismissing the indictment, and for such other and further relief as may be just and proper in the premises.

Respectfully requested,

RONALD MESSAM
Defendant, In Pro. Per.
#700-08-00073
15-15 Hazen Street
East Elmhurst, N.Y. 11370

SWORN TO BEFORE ME THIS

20 DAY OF November, 2009.

NOTARY PUBLIC

MaryBeth Campbell
Notary Public, State of New York
No. 02CA6171492

- 3 -

## BRIEF MEMORANDUM OF LAW

When a government action deprives a person of life, liberty, or property without fair procedures, it violates procedural due process. UNITED STATES v. DETERS, 143 F 3d 577 (10th. Cir. 1998)

"Fair warning Doctrine" invokes due process rights and requires that criminal statute at issue be sufficiently definite to notify persons of reasonable intelligence that their planned conduct is criminal. UNITED STATES v. NEVERS, 7 F 3d 59 (5th. Cir. 1993)

N.Y.S. Mental Hygiene Law § 33.13 "...clearly provides that the records may be disclosed to anyone without consulting the patient, on the consent of the Commissioner, or upon the order of a court of record." SCOLAVINO v. STATE, N.Y.Ct.Cl. 1946, 187 Misc. 253; GREFF v. HAVENS, 186 Misc. 914.